**Maurice E. BROWN, Plaintiff-Appellant,**

v.

**Patrick Lee ROYALTY,
Defendant-Appellee.**

**No. 75–1330.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1976.
Decided May 5, 1976.

William H. Pickett, Kansas City, Mo., for plaintiff-appellant.

Max W. Foust, Kansas City, Mo., for defendant-appellee; Max W. Foust and John W. Kelly, Jr., Kansas City, Mo., on the brief.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Appellant-plaintiff Maurice E. Brown appeals from a denial of his motion for a new trial made after a jury verdict for appellee-defendant Patrick Royalty in an automobile case. In his new trial motion, Brown asserted that the defendant's attorney had improperly and prejudicially implied to the jury that: (1) the defendant had not received a traffic citation because of the accident; and (2) the plaintiff's medical bills were not paid by the plaintiff but by his insurance company. On appeal, Brown asserts that the trial court abused its discretion in failing to grant a new trial on these grounds. We agree and reverse and remand for a new trial.

At approximately 7:00 A.M., on February 28, 1971, the defendant's truck struck the left side of the plaintiff's car at the intersection of 12th Street and Charlotte Avenue in Kansas City, Missouri, causing severe damages to both vehicles and extensive physical injuries to the plaintiff.

The preliminary police investigation indicated that the accident was caused by the failure of one of the drivers to obey the traffic light that controlled access to the intersection. The Missouri Uniform Accident Report, filled out by Officer Phillip Graham, did not state which driver had failed to obey the signal. It also did not list any eyewitnesses to the accident or specify any violations of the law as "contributing circumstances" of the accident. The defendant was not issued a traffic citation as a result of the accident.

Because the plaintiff was a police officer, off duty at the time of the accident, an additional investigation was undertaken that morning by Sergeant James Rowe, the Department Safety Officer. No conclusion was reached as to the cause of the accident, although several tests were administered to ascertain if the defendant had disobeyed the traffic light.

During discovery, it was learned that two police officers were parked near the intersection when the accident occurred. Neither officer saw the accident, but Sergeant Ronald Canaday stated that he looked up immediately upon hearing the sound of the collision and observed that the defendant's line of travel was controlled by a red light. The second officer, Gerald Bailey, stated that he did not notice the color of the traffic light.

On the morning of trial, the plaintiff's counsel filed a motion *in limine* seeking to suppress certain inadmissible testimony he felt the defense counsel might allude to during trial. He sought to prohibit, *inter alia*, any reference or implication to the fact: (1) that the defendant was not issued a traffic citation as a result of this accident; and (2) that the plaintiff's medical bills were paid by his insurance company. Defense counsel agreed that he would make no reference to the fact that his client did not receive a traffic ticket in opening argument. However, he felt that this evidence might be relevant to challenge Sgt. Canaday's testimony that he saw a red light controlling the defendant's access to the intersection immediately after the collision in light of the fact that the defendant was not issued a traffic ticket. The trial court indicated that if the matter was to be presented to the jury, a hearing would first be necessary to determine whether it was admissible. Defense counsel conceded that he could not raise the issue that plaintiff's medical bills were paid by a collateral source.

Sergeant Canaday, plaintiff's initial witness, testified that he observed a red light in the direction the defendant was traveling just after the accident occurred. During cross-examination, plaintiff's counsel sought and received a bench conference to insure that the defense counsel would not allude to the fact that the defendant did not receive a traffic ticket. The defense counsel responded: "I have no intention of doing that with this witness."

The plaintiff's third witness was Officer Leroy Day. During cross-examination, the defense counsel asked Day if any conclusions could be reached as a result of the tests he and Officer Rowe had performed to determine whether the defendant had run a red light. Day stated: "I don't know anything about that." The defense counsel then began to refer to Officer Day's deposition, and plaintiff's counsel immediately sought another bench conference. At the conference, plaintiff's counsel sought to in-

sure that no reference would be made to questions in the deposition regarding the fact that the defendant had not been given a traffic ticket. The defense counsel responded: "I told you before I wouldn't."

In cross-examination of the plaintiff's fourth witness, Officer Rowe, the defense counsel asked if one of the purposes of an investigation was to determine if someone had violated an ordinance or a law. He then asked:

Do you have any independent knowledge as a result of having seen the criminal investigation report that you have in your hand, or the investigation made by you, that anybody connected with this entire investigation found that Pat Royalty violated any law or ordinance?

Plaintiff's counsel objected. The court sustained the objection stating that the jury would not be bound by determinations of fact made by other persons.

During the direct examination by defense counsel of Officer Graham, the author of the accident report, the plaintiff's attorney again requested a bench conference. He sought to insure that the defense counsel would not ask any questions concerning the section of the accident report labeled "contributing circumstances" because that section would indicate whether or not the defendant had received a traffic ticket as a result of the accident. The defense counsel responded: "I am just going to ask him if he completed that section of the report." Following this representation, the defense counsel examined Officer Graham about the accident report section-by-section. He then moved for its admission into evidence. It was received without objection. The defense counsel then asked and received permission to pass the accident report to the jury and to read from it to the jury. After reading several parts of the report, the defense counsel stated:

Officer, let me have that [the accident report] again. I think that covers what I was unable to read. Then, with reference to that portion of the report on page two, that calls for arrests, you show none, is that correct?

A. Yes, sir.

The plaintiff's counsel then objected and moved to strike the question and the answer from the record. The court ordered it stricken and told the jury to disregard it.

During closing argument, the defense counsel made the following statement in reference to the Police Department's investigation of the accident:

[T]here wasn't any doubt in their minds that there was no evidence that he [the defendant] had been guilty of negligence, that he had violated an ordinance or anything of the sort.

Plaintiff's counsel objected and asked that the defense counsel be admonished and the jury be instructed to disregard this statement. The trial court instructed the jury that whether or not a person receives a traffic ticket merely reflects the opinion of one officer and is not admissible in evidence. He instructed the jurors that they were "the sole determinators of the facts."

In addition to the continued attempts by the defense counsel to inform the jury that his client was not cited for a traffic violation as a result of the accident, the defense counsel also, by his questioning, referred to the fact that the plaintiff's medical bills were paid by a collateral source. The following questions were asked the plaintiff on cross-examination:

Q. Mr. Brown, these bills were all paid immediately after they were incurred, weren't they?

A. No.

Q. Within a month, I am talking about these medical bills.

A. They were paid when I could pay them.

Q. Now, Mr. Brown, you didn't pay any of those bills, did you?

MR. PICKETT: Your Honor, may we approach the bench?

THE COURT: The objection will be sustained. The bills have been paid and that is his testimony.

The District Court's decision denying the motion for a new trial analyzed only one of the defense counsel's attempts to inform the jury that the defendant had not received a traffic ticket. He found that the defense counsel had erred in reading from the accident report that no citations had been given. However, the court found that no prejudice resulted from this incident because the plaintiff's objection thereto was sustained and because the jury had been instructed to disregard this fact. The court also noted that the plaintiff had not asked for a mistrial at this time, and even if he had, one would not have been granted. The trial court excused the statement of the defense counsel that the plaintiff had not paid his medical bills on the grounds that the plaintiff had opened the door to this fact by his earlier answers on direct testimony. The trial court found that these answers had left the impression that the plaintiff was "out" an amount of money from this accident, including the cost of his medical care. The court found that the plaintiff's counsel's earlier question and the response of the plaintiff had been "improper" and had caused some "righteous indignation on the part of defendant's counsel." The court found that because he had promptly sustained the plaintiff's objection to defense counsel's subsequent improper question, no harm was done.

■ Although this is a diversity case where the substantive law of the forum state controls, the granting or denial of a new trial is a matter of procedure governed by federal law. Wright & Miller, *Federal Practice and Procedure*: Civil ¶ 2802. Rule 59 of the Federal Rules of Civil Procedure allows a trial court to order a new trial where necessary to insure that all parties receive a just and fair determination of the issues presented. The scope of review of a trial court's decision to deny a new trial was most recently set forth in this Circuit in *Sanden v. Mayo Clinic*, 495 F.2d 221, 226 (8th Cir. 1974):

A motion for a new trial is addressed to the sound discretion of the trial court and the action of the trial court should not be upset absent a strong showing of an abuse thereof.

■ Even in light of this strict standard of review, we hold that a new trial must be held in the interest of fairness to all the parties. The trial court, at the pretrial conference, indicated that evidence concerning the failure of the defendant to receive a traffic ticket was inadmissible subject to further argument. The defense counsel never sought an opportunity to alter this ruling. Instead, he took advantage of every possible opportunity to suggest to the jury that, in fact, his client had not received a traffic ticket. His assurances to the court and counsel that he would not do so were empty, and he clearly disregarded the court's rulings during trial that this evidence was inadmissible.

■ Nor do we find that the trial court's determination that this evidence was prejudicial and might mislead the jury to be error. Under Rule 402 of the Federal Rules of Evidence, relevant evidence is generally admissible except, *inter alia*, where

> its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury * * *.

Federal Rule of Evidence 403.

In Missouri, evidence of the fact that a traffic citation was or was not issued is inadmissible in a negligence case because it is prejudicial and brings before the jury a false issue. *Dorrell v. Moore*, 504 S.W.2d 174, 177 (Mo.1973); *Wills v. Townes Cadillac-Oldsmobile, Incorporated*, 490 S.W.2d 257, 262–263 (Mo.1973); and *Cotton v. Pyle*, 400 S.W.2d 72, 75–76 (Mo.1966). Indeed, its admittance into evidence is grounds for a mistrial. *Dorrell v. Moore, supra*, and *Wills v. Townes Cadillac-Oldsmobile, Incorporated, supra*.

The defense counsel also failed to keep his agreement to refrain from implying that the plaintiff had not personally paid his medical bills. The record on appeal reveals that the defense counsel, through his statement during cross-examination of the plaintiff, deliberately conveyed the impression to the jury that the plaintiff had not paid his own medical bills. Our review of the record does not disclose any justification for this blatant breach of the pretrial agreement or for the attempt of the defense counsel to bring this inadmissible evidence before the jury.[1]

■ The trial court's determination that evidence of the fact that a collateral source had paid plaintiff's medical bills is inadmissible is also not error. It is generally considered that the interjection by the defense that a plaintiff has recovered a portion of his economic loss resulting from an accident because of payments by a collateral source is prejudicial and may be grounds for a mistrial. *See Transit Casualty Co. v. Transamerica Insurance Co.*, 387 F.2d 1011, 1013–1014 (8th Cir. 1967); *Halladay v. Verschoor*, 381 F.2d 100, 112–113 (8th Cir. 1967); *Siemes v. Englehart*, 346 S.W.2d 560, 563–564 (Mo.1961); and *Kickham v. Carter*, 335 S.W.2d 83, 89–90 (Mo.1960). *See generally* Maxwell, *The Collateral Source in the American Law of Damages*, 46 Minn.L.Rev. 669 (1962). In *Transit Casualty Co. v. Transamerica Insurance Co., supra*, a case applying Missouri law, the Court overruled the trial court's denial of a new trial motion stating:

> If counsel, interjecting the issue of insurance, demonstrates that it was done in good faith and was slight, a new trial might not be required. * * * Here, however, the interjection was neither in demonstrable good faith nor slight.

*Id.* at 1014 (citations omitted).

In this case, the defense counsel's references to the fact that his client did not receive a traffic ticket and that the plain-

---

1. The defense counsel failed to include in the appendix any evidence to justify his reference to the fact that the plaintiff had not paid his own medical bills. Nor did the defense counsel, at oral argument, seek leave of the court to add any additional material to the record. Even considering the defense counsel's state-

ment, at oral argument, that the plaintiff "opened" the door to this subject, we cannot condone the defense counsel's blatant disregard to the court's earlier ruling that this evidence was inadmissible or counsel's failure to keep his own promise not to refer to this fact.

tiff did not pay his own medical bills were neither slight nor done in good faith. The defense counsel deliberately made reference to these facts despite the rulings of the trial court that this evidence was inadmissible and despite his own assurance to the court that he would not refer to these subjects. The result of this conduct was to deny the plaintiff a fair trial.

We reverse and remand for a new trial.

WEBSTER, Circuit Judge (dissenting).

I dissent. Only the most compelling circumstances would warrant an appellate court's rejection of a district court's own assessment of whether a violation of its ruling was fatally prejudicial.

The trial judge heard the testimony, observed the witnesses, and saw the apparent effect or noneffect of defense counsel's actions upon the jury. Judge Collinson ruled promptly in favor of plaintiff on his objection to the challenged testimony. He gave the jury appropriate instructions to disregard the improper questions and answers. Who then is better situated to pass upon a motion for new trial based upon such improper testimony?

> A motion for a new trial is addressed to the sound discretion of the trial court and the action of the trial court should not be upset absent a strong showing of an abuse thereof. *Farmers' Cooperative Elevator Association Non-Stock of Big Springs, Nebraska v. Strand*, 382 F.2d 224, 230–231 (8th Cir.), *cert. denied*, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); *Bankers Life & Casualty Co. v. Kirtley*, 307 F.2d 418, 423 (8th Cir. 1962).

*Sanden v. Mayo Clinic*, 495 F.2d 221, 226 (8th Cir. 1974).

The District Court, in its order denying the motion for new trial, noted the somewhat unusual circumstances under which the defendant pressed to establish that no citation had been issued. The plaintiff was himself a policeman. Another policeman on the scene testified that defendant's car had entered the intersection against the red light. The police officer charged with investigating the accident arrived a short time after the accident. His report did not mention the "eye ball" policeman in the list of witnesses. Thus a colorable basis for impeaching the "eye ball" policeman was presented to the judge. The police officer's report was offered and received in evidence, without objection, while the officer was on the stand. No objection was made to reading the report to the jury. Only after the no-citation reference was read was there an objection. The judge promptly and fully cautioned the jury that the officer's opinion was not probative. No mistrial was requested.

Under such circumstances it seems incumbent upon the reviewing court to defer to the trial judge's assessment of the prejudice, if any, which resulted. Moreover, we have long held that a party may not withhold assertion of a trial error other than plain error and then urge the error upon appeal if the verdict is not to his liking. A motion for mistrial must be promptly filed if counsel believes the court's action on his objection is insufficient to cure the prejudice. *See Skogen v. Dow Chemical Co.*, 375 F.2d 692, 703 (8th Cir. 1967); *Complete Auto Transit, Inc. v. Wayne Broyles Engineering Corp.*, 351 F.2d 478, 481–82 (5th Cir. 1965). *See also Nanda v. Ford Motor Co.*, 509 F.2d 213, 222 (7th Cir. 1974).

Under Missouri law, evidence of whether a party was issued a citation for violation of a traffic ordinance is inadmissible as not materially probative of negligence. *See Wills v. Townes Cadillac-Oldsmobile, Inc.*, 490 S.W.2d 257, 262–63 (Mo.1973); *Cotton v. Pyle*, 400 S.W.2d 72, 75–76 (Mo.1966). Where reference to a citation or lack of citation occurs, the Missouri courts have consistently held that the error is not plain but must be assessed in light of the circumstances of the particular case in order to determine whether prejudice resulted. *Wills v. Townes Cadillac-Oldsmobile, Inc.*, *supra*, 490 S.W.2d at 262–63; *Cotton v. Pyle*, *supra*, 400 S.W.2d at 75–76. As the Supreme Court of Missouri recognized in the latter case:

> There are, of course, circumstances in which it is clear that an attempt to re-

move by instruction to the jury the prejudicial effect of incompetent testimony, or questions improperly put by counsel, would be ineffective to remedy the error. * * * Much is left to the discretion of the trial court in determining whether corrective action is appropriate and sufficient * * *, and the trial court is in a much better position to determine whether a verdict has been obtained through "sharp practice," * * *. [citations omitted]

*Id.* at 76. *See also Commerford v. Kreitler,* 462 S.W.2d 726, 733–34 (Mo.1971).

Similarly, the "collateral source" rule was only indirectly implicated in the cross-examination of the plaintiff as to whether his medical bills had been promptly paid. The plaintiff testified: "They were paid when I could pay them." This prompted defense counsel to respond: "Now, Mr. Brown, you didn't pay any of these bills, did you?" The court immediately sustained plaintiff's objection. In denying the motion for new trial, the District Court considered its ruling on the objection sufficient to prevent prejudice and noted in effect that the jury must have decided the case on the issue of liability since the injuries established by the evidence were substantial.

I do not mean to suggest that intentional misconduct by counsel should be allowed to prejudice the rights of the other party. The intent and degree of harm, however, can best be judged by the judicial officer who observed the conduct. While I would have affirmed the District Court had it determined that defense counsel's conduct warranted a new trial, provided a foundation had been laid therefor, I think the same deference to a close question—that of prejudice—requires us to rely upon the assessment of the trial judge in an area so deeply committed to his discretion.

I would affirm.